IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**MICHAEL GRIFFIN**             **PLAINTIFF**

NO. 3:20-CV-00178-JMV

**KILOLO KIJAKAZI,**
Acting Commissioner of Social Security[1]         **DEFENDANT**

**MEMORANDUM OPINION**

This cause is before the Court on the Plaintiff's complaint pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable final decision of the Commissioner of the Social Security Administration regarding an application for a period of disability and disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The Court, having reviewed the record, the administrative transcript, the briefs of the parties, and the applicable law and having heard oral argument, finds that for the reasons set out below, the Commissioner's decision should be reversed and the case remanded.

Standard of Review

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court

---

[1] The Clerk is directed to amend the record to reflect the substitution of the Acting Commissioner as successor in the place of Andrew Saul.

recently explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

## Discussion

Plaintiff presents three issues for this appeal; however, the Court finds only the following meritorious[2]:

---

[2] Plaintiff also argues the ALJ erred by not declaring his cervical spine arthritis and cervical spine pain severe impairments. Even assuming the ALJ erred in this regard, Plaintiff has failed to meet his burden to show prejudice. Specifically, Dr. Timothy Callahan performed a CE on August 24, 2018. In his report of that examination, Dr. Callahan noted Plaintiff's report of "constant neck pain;" indicated "normal" cervical ranges of motion, except for extension that was "decreased to 35 degrees due to pain"; and insinuated Plaintiff's complaints of pain were exaggerated ("I thought it interesting that almost every maneuver I asked him to do, he was gasping with pain."). Though Dr. Callahan failed to provide an RFC assessment, DDS physician Thomas Jeffcoat, M.D., did in an RFC

1. Whether there was prejudicial error committed in the VE's assessment of jobs that Plaintiff could perform.

2. Whether the ALJ erred by failing to consider if Plaintiff meth the Special Vocational Profile for Arduous Unskilled Work.

Having given due consideration to the submissions of the parties, the record, and the applicable law, the Court finds the ALJ committed reversible error with respect to both issues.

**1. The ALJ committed reversible error in his consideration of the VE's testimony.**

Plaintiff essentially argues the ALJ violated SSR 00-4p and erred by relying on VE testimony that caused a conflict between his RFC and the Dictionary of Occupational Titles (DOT) and the Selected Characteristics of Occupations (SCO). The Court agrees.

An ALJ is required to identify and obtain reasonable explanations for any apparent conflict between a vocational expert's testimony and information in the Dictionary of Occupational Titles (DOT).[3] To begin, SSR 00-4p emphasizes that:

> before relying on VE or VS evidence to support a disability determination or decision, our adjudicators *must*: **Identify and obtain a reasonable explanation for**

---

assessment dated September 19, 2018. It is apparent that Dr. Jeffcoat reviewed the CE findings before he expressed an RFC for a limited range of medium work. Dr. Jeffcoat's assessment constitutes substantial evidence for the RFC crafted by the ALJ. Plaintiff has made no argument that the RFC is not supported by substantial evidence.

[3] Defendant contends this argument is waived under the holding in *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). I find *Carey* inapposite because in *Carey*, the conflict between the VE's testimony and the DOT was only "implied or indirect" or "tangential," and the record otherwise reflected an adequate basis for relying on the VE's testimony. *See Carey*, 230 F.3d at 145-146. The Fifth Circuit explained that the VE's testimony in that case "comport[ed] with both the DOT [description] and the ALJ's determination of Carey's residual functional capacity," and Carey's argument amounted to a "factual disagreement" with the expert's testimony about whether he could perform the jobs proffered by the VE. *Id.* at 146. Here, on the other hand, the VE's testimony created a direct conflict between the RFC found by the ALJ (occasional reaching overhead) and the DOT descriptions (frequent and constant reaching without qualification) for the jobs proffered by the VE. *See id.* at 145-46 (including this "less obvious" type of conflict in a category separate and apart from the category of indirect or implied conflicts). Moreover, nothing in this case indicates that the VE clearly appreciated the conflicts between the DOT and the claimant's RFC. Nor is there anything that indicates she would have maintained her testimony had she been confronted with the conflicts. Importantly, the VE never definitively testified that the jobs she proffered did not require more than occasional overhead reaching. *Bailey v. Saul* is likewise, inapposite, because in that case <u>there was no conflict</u> between the VE's opinion and the DOT. *Bailey v. Saul*, 853 Fed. App'x 934, 937 (5th Cir. 2021) (applying *Carey* where there was only an alleged conflict). Defendant has failed to present any binding authority that calls for a different conclusion under the facts of this case.

> *any conflicts between occupational evidence provided by VEs or VSs and information in the . . . [DOT and SCO] . . . and Explain in the determination or decision how any conflict that has been identified was resolved.*

SSR 00-4p, 2000WL 1898704, at *1 (emphasis added). In this case the ALJ assessed Plaintiff with an RFC for a reduced range of medium work, including among other things a limitation to only occasional overhead reaching bilaterally. The VE testified that a person with Plaintiff's RFC could not perform his past relevant work but could perform other jobs at the medium exertional level, including parts picker, dishwasher, and vendor. Plaintiff asserts that a parts picker or laborer position is inconsistent with his RFC because the job is listed in the DOT and SCO as requiring frequent reaching in all directions. He argues the dishwasher job as described in the SCO and DOT is inconsistent with his RFC because it requires constant reaching in all directions. Finally, he contends the vendor job is inconsistent with his RFC because it is a job that requires frequent reaching.

In *Everhart v. Commissioner*, Judge Sanders pointed out that both the DOT and the regulations define reaching as "extending the hand(s) and arm(s) in any direction." *Everhart v. Commissioner*, No. 3:17cv188-DAS, 2018 WL 3614196, at *2. Judge Sanders concluded the conflict there was apparent and highlighted the ALJ's affirmative duty under SSR 00-4p to identify apparent conflicts between the VE's testimony and the DOT, obtain reasonable explanations before relying on the VE's testimony, and explain how he or she (the ALJ) resolved the conflict.[4] *Id.* at *2-4. Because identical conflicts are presented in this case, I find Judge

---

[4] SSR 00-4p unambiguously sets out the ALJ's affirmative duties:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

Sanders's ruling instructive.[5] The jobs identified by the VE in this case: parts picker (DOT #922.687-058), kitchen helper (DOT #318.687-010), and vendor (DOT #291.457-022); require frequent, constant, and frequent reaching, respectively, according to the DOT. It is undisputed that the medium hypothetical presented to the VE—which was ultimately adopted as the claimant's RFC by the ALJ—limited the claimant to only occasional reaching, albeit overhead bilaterally. Therefore, apparent conflicts between the DOT/SCO job descriptions and the claimant's RFC were created by the VE's testimony. It appears that neither the ALJ nor the VE recognized there were conflicts between the VE's testimony and the DOT. Indeed, when asked if her testimony was consistent with the DOT, the VE responded affirmatively, and there was no further development by the ALJ.

---

> ***If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.***
>
> *. . .*
>
> ***When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.***

SSR 00-4p, 2000 WL 1898704, at *4 (emphasis added).

[5] During oral argument, counsel for Defendant asked the undersigned to depart from Judge Sanders's conclusion and, instead, adopt the reasoning of the Southern District of Texas in *Joseph B. v. Saul*, 4:19cv1285, 2020 WL 7024310, at *8-9 (S.D. Tex. Nov. 30, 2020). That court dealt with the identical conflict presented here but found "no direct and obvious" conflict because the DOT's narrative job description for the jobs in that case did not "specifically state, or otherwise indicate, that overhead reaching [was] required" and the DOT/SCO described the jobs as requiring frequent reaching, "which can be in any direction." *Id.* at *9. Citing that case, Defense counsel argued the conflict in this case is not direct and obvious and suggested that *Carey*'s definition of direct or obvious conflicts only contemplated conflicts between a VE's testimony and the exertional demands or skill levels in the DOT job description. The undersigned is not persuaded by this argument. Precisely because the DOT and the regulations define reaching as involving "extending the arms in any direction" and because the DOT "lists the maximum requirements of occupations as generally performed," *see* SSR 00-4P, at *3, it is not unreasonable to conclude, without definitive VE testimony to the contrary, that the job descriptions in this case include frequent or constant reaching in any direction, including overhead. So, because the DOT job descriptions here include frequent and constant reaching, and the DOT definition of reaching includes reaching "in any direction," these descriptions did not exclude overhead reaching, and there was an apparent conflict. Accordingly, there is no need to part ways with Judge Sanders.

Defendant contends the VE's testimony was "sufficient to resolve any alleged conflict." However, I find this argument untenable in view of the fact the record indicates neither the VE nor the ALJ recognized conflicts had been created by the VE's testimony and, consequently, no testimony was elicited to resolve them.[6] Moreover, Defendant offers nothing concerning the ALJ's duty to explain *how* he resolved the conflicts. Ultimately, because the burden was on the ALJ to identify and resolve the discrepancies between the VE's testimony and the DOT—and this was not done—and it was the Defendant's burden at step 5 of the sequential evaluation process to prove there were a significant number of jobs in the national economy the claimant could perform, remand is appropriate.[7]

## 2. The ALJ erred by failing to consider if Plaintiff met the Special Vocational Profile for Arduous Unskilled Work.

Here, Plaintiff essentially argues the ALJ committed legal error by failing to apply the "worn-out worker" or "arduous worker" rule. The arduous worker rule of 20 C.F.R. § 404.1562(a) provides:

> (a) *If you have done only arduous physical labor.* If you have no more than a marginal education (*see* § 404.1564) and work experience of 35 years or more during which you did only arduous unskilled physical labor, and you are not working and are no longer able to do this kind of work because of a severe impairment(s) (*see* §§ 404.1520(c), 404.1521, and 404.1523), we will consider you unable to do lighter work, and therefore, disabled.

20 C.F.R. § 404.1562(a). According to SSA policy, arduous work, for the purpose of the arduous unskilled labor rule, is primarily physical work requiring a high level of strength or

---

[6] Furthermore, as pointed out in footnote 3, the VE never definitively testified that the jobs she proffered did not require more than occasional overhead reaching.

[7] *See, e.g., Romine v. Barnhart*, 454 F. Supp. 2d 623, 628-629 (E.D. Tex. 2006) (stating the potential prejudice was "almost self-evident" because the jobs suggested by the VE required capabilities beyond the plaintiff's limitations and noting the VE "might well have changed her opinion in the face of that direct conflict, or, alternatively, [the] ALJ . . . might have concluded that [the] VE . . . could not provide a reasonable explanation for the conflict.").

endurance, which work usually entails "physical demands that are classified as heavy." *See* SSR 82-63, 1982 WL 31390, at *3.

According to Defendant:

> The purpose of the "worn out worker" rule is to make sure that the claims of these workers are not denied by a strict application of the Grid Rules. Social Security Ruling (SSR) 82-63, 1982 SSR LEXIS 35, 1982 WL 31390, at *1. If a claimant meets the special criteria of the rule, then he is considered not to have the ability to adjust to other work, and the analysis ends with the claimant being found disabled. *Id.* On the other hand, if the claimant does not meet the criteria of the "worn out worker" rule, the decision maker proceeds to consider the claimant's RFC, age, education, and work experience to see if an adjustment can be made to other work. 20 C.F.R. § 404.1520(a)(4)(v).

Def.'s Br. 13 n. 6.

Here, Plaintiff asserts that he performed arduous work for 43 years, from February 1974 to February 2017, as a self-employed contractor, lifting 50 pounds or more frequently in an eight-hour day (Tr. 200).[8]  This assertion is supported by VE testimony that this work as a *laborer* (in the construction industry without a license) was unskilled "heavy" work.  Moreover, the VE testified that in this work, Plaintiff was "primarily . . . performing laborer type duties. . . . Like removing a toilet or laying pipes, putting up sheetrock . . . ." Tr. 46.  Additionally, Plaintiff contends he has a marginal education.  According to Defendant, "[t]he regulations generally consider a marginal education to be 'formal schooling at a 6th grade level or less.' 20 C.F.R.§ 404.1564(b)(2)."  Plaintiff testified he completed the sixth grade.  Nevertheless, the ALJ found the Plaintiff had a "limited" education.  In the brief and during oral argument, counsel for

---

[8] Defendant argues that because the VE testified that one of Plaintiff's other past relevant jobs, plumber's helper (*DOT* # 869.684-014), was *semiskilled* rather than unskilled work, he does not meet the qualifications of the worn-out worker regulation.  However, Plaintiff answers this issue by pointing out that under the Commissioner's own policy, short periods of work at the semi-skilled or skilled level (if no transferable skills exist) will not necessarily disqualify a claimant from meeting the requirements of the rule.  *See* SSR 82-63*, 1982 WL 31390, at* *3*.  See also* POMS DI 25010.001.  Accordingly, in the Court's view, 9 months of work in the plumber's assistant job appears to meet the definition of brief in view of a 43-year work history.  Defense counsel acknowledged the same during oral argument.

Defendant pointed out that other evidence supports the ALJ's conclusion that Plaintiff had a "limited" education. However, nothing in the ALJ's decision explains how he reached the conclusion that Plaintiff had a "limited" education in view of the language of regulation cited by Defendant[9] and the VE's testimony that plaintiff performed only laborer-type duties. Indeed, while the Acting Commissioner highlights the fact that Plaintiff testified he could "look at some blueprints and know what to do," the Court recognizes Plaintiff clarified: "I couldn't read them, but I was brought up around them and know about what they were saying." Tr. 42. Moreover, the Acting Commissioner has failed to present any persuasive legal authority in support of her argument. Accordingly, from all appearances, the ALJ failed to apply the regulation and committed legal error in this instance. Alternatively, the ALJ's decision is beyond meaningful judicial review because no explanation was provided as to how the ALJ reached the conclusion that Plaintiff had a limited education—the other criteria under the arduous worker rule appearing to have been established. Ultimately, the undersigned is unable to conclude the ALJ's finding the claimant had a limited education is supported by substantial evidence. Nor does the Court agree with Defendant's contention that Plaintiff's substantial rights were not affected by the ALJ's failure to address the "worn out worker" rule, especially considering this regulation expressly directs a finding of disabled for a claimant who meets its criteria.

Based on the foregoing, this case will be reversed and remanded for further proceedings.

Signed this 13th day of September, 2021.

/s/ Jane M. Virden
U.S. Magistrate Judge

---

[9] Again, according to Defendant, under the regulations: "we 'generally consider that a 7th grade through the 11th grade level of formal education is a limited education.' 20 C.F.R. § 404.1564(b)(3)."